Filed 7/16/24  P. v. Munoz CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B329389 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA033493) |
| v. | |
| DELFINO OLIVAS MUNOZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, LaRonda J. McCoy, Judge.  Affirmed.

William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 1996, a jury convicted appellant Delfino Olivas Munoz (Munoz) of special circumstance murder committed when he was 24 years old.  Munoz was sentenced to life imprisonment without the possibility of parole (LWOP).  In 2023, Munoz moved, pursuant to Penal Code[1] section 1203.01, for a proceeding under *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*) and *In re Cook* (2019) 7 Cal.5th 439 (*Cook*) seeking to preserve evidence for a future youth offender parole hearing under section 3051.  The trial court denied Munoz's motion because he was statutorily ineligible for a youth offender parole hearing.  Munoz appeals, contending section 3051 violates equal protection by excluding young adult offenders sentenced to LWOP.  Munoz further contends his sentence constitutes cruel and unusual punishment.  We reject these contentions and affirm the trial court's order.

## DISCUSSION

### I.  Section 3051

Section 3051 gives certain youth offenders the opportunity for parole in their 15th, 20th, or 25th year of incarceration, depending on the length of the sentence they are serving for their "controlling offense."[2]  (§ 3051, subds. (a)(2)(B), (b)(1)–(4); *Franklin, supra,* 63 Cal.4th at p. 277.)

The Legislature amended section 3051 in 2017 to allow parole eligibility hearings for juveniles—but not young adult offenders—sentenced to LWOP.  (§ 3051, subd. (b)(4); Stats. 2017, ch. 684, § 1.5.)  The purpose of this amendment was to bring

---

[1] All further statutory references are to the Penal Code.

[2] " 'Controlling offense' " is the offense or enhancement for which the longest term of imprisonment was imposed.  (§ 3015, subd. (a)(2)(B).)

California into compliance with federal law articulating the constitutional limits on sentencing young offenders. (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 394 (2017–2018 Reg. Sess.) Mar. 21, 2017, p. 4.) In *Miller v. Alabama* (2012) 567 U.S. 460 [132 S.Ct. 2455, 183 L.Ed.2d 407] (*Miller*), the Supreme Court held mandatory LWOP sentences for juveniles unconstitutional. In *Montgomery v. Louisiana* (2016) 577 U.S. 190 [136 S.Ct. 718, 193 L.Ed.2d 599] (*Montgomery*), the Supreme Court made the prohibition on mandatory LWOP sentences for juveniles retroactive. *Montgomery* provided, however, that "[a] State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." (*Id*. at p. 212.) By amending section 3051, the Legislature sought "to remedy the now unconstitutional juvenile sentences of [LWOP]," without the need for "a resentencing hearing, which is time-consuming, expensive, and subject to extended appeals." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 394 (2017–2018 Reg. Sess.) Mar. 21, 2017, p. 3; *People v. Morales* (2021) 67 Cal.App.5th 326, 346–347 (*Morales*).)

Neither *Miller* nor *Montgomery* declared LWOP sentences for young adults unconstitutional, and section 3051 continues to exclude from the youth offender parole hearing process several categories of offenders, including young adults sentenced to LWOP. (§ 3051, subd. (h).) The statute " 'permit[s] the reevaluation of the fitness to return to society of persons who committed serious offenses prior to reaching full cognitive and emotional maturity,' unless the person was 'between 18 and 25 years of age when they committed their offense [and] sentenced to [LWOP].' [Citation.] It therefore 'distinguishes both between

3

those who committed their offenses under 18 years of age and those between 18 and 25 years of age, and between offenders 18 to 25 years of age sentenced to prison terms with the possibility of parole and those in the same age group who have been sentenced to [LWOP].' " (*People v. Acosta* (2021) 60 Cal.App.5th 769, 777 (*Acosta*).)

After enactment of section 3051, the California Supreme Court decided *Franklin*, which created a process for offenders who qualified for a youth offender parole hearing under section 3051 to preserve youth-related mitigation evidence. (*Franklin, supra*, 63 Cal.4th at pp. 283–284.) A *Franklin* proceeding gives " 'an opportunity for the parties to make an accurate record of the juvenile offender's characteristics and circumstances at the time of the offense so that the Board [of Parole Hearings], years later, may properly discharge its obligation to "give great weight to" youth-related factors (§ 4801, subd. (c)) in determining whether the offender is "fit to rejoin society" ' " despite having committed a serious crime while he was a child in the eyes of the law. (*Cook, supra,* 7 Cal.5th at p. 449.)

## II. Equal protection

On appeal, Munoz initially raised two equal protection arguments. He first argued that section 3051 violates equal protection by treating young adult offenders sentenced to LWOP differently from young adult offenders convicted of murder and serving parole eligible sentences. Munoz next argued there is no rational basis for treating young adult offenders sentenced to LWOP differently from juvenile offenders (offenders younger than 18 at the time of the offense) sentenced to LWOP.

While this appeal was pending, the California Supreme Court in *People v. Hardin* (2024) 15 Cal.5th 834 held that it was

4

not irrational for the Legislature to exclude from youth offender parole eligibility young adults serving LWOP sentences. (*Id.* at p. 864.) Munoz concedes that *Hardin* forecloses his equal protection challenge premised on the statutory distinction between young adults sentenced to LWOP and young adults convicted of murder who receive non-LWOP sentences. The Supreme Court in *Hardin* did not address Munoz's alternative equal protection argument—that section 3051 violates equal protection by excluding young adult offenders sentenced to LWOP while including juvenile offenders sentenced to LWOP. We reject that contention for reasons we discuss.

"Both the Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution guarantee to all persons the equal protection of the laws. The right to equal protection of the laws is violated when 'the government . . . treat[s] a [similarly situated] group of people unequally without some justification.' [Citations.] 'The California equal protection clause offers substantially similar protection to the federal equal protection clause.' " (*People v. Jackson* (2021) 61 Cal.App.5th 189, 195 (*Jackson*).)

"To succeed on an equal protection claim, [Munoz] must first show that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner." (*People v. Edwards* (2019) 34 Cal.App.5th 183, 195 (*Edwards*).) This initial inquiry is not whether persons are similarly situated for all purposes, but whether they are similarly situated for purposes of the law challenged. (*People v. Morales* (2016) 63 Cal.4th 399, 408.)

If the appellant can establish a class of criminal defendants is similarly situated to another class of defendants who are

5

sentenced differently, we look to determine whether there is a rational basis for the difference.  (*Edwards, supra*, 34 Cal.App.5th at p. 195.)  Under this highly deferential standard, "equal protection of the law is denied only where there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.' " (*People v. Turnage* (2012) 55 Cal.4th 62, 74 (*Turnage*).)

To raise a successful rational basis challenge, a party must negate " ' "every conceivable basis" ' that might support the disputed statutory disparity." (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881.)  "It is both the prerogative and the duty of the Legislature to define degrees of culpability and punishment, and to distinguish between crimes in this regard. [Citation.]  Courts routinely decline to intrude upon the 'broad discretion' such policy judgments entail.  [Citation.]  Equal protection analysis does not entitle the judiciary to second-guess the wisdom, fairness, or logic of the law." (*Turnage, supra*, 55 Cal.4th at p. 74.)  We independently review Munoz's challenge to section 3051.  (*Jackson, supra*, 61 Cal.App.5th at p. 195.)

Munoz's equal protection claim fails because even if we assume he is similarly situated to juvenile offenders sentenced to LWOP, he fails to demonstrate the absence of a rational basis for treating him differently from the juvenile offenders.  As the appellate court explained in *People v. Sands* (2021) 70 Cal.App.5th 193:  "The Legislature had a rational basis to distinguish between offenders with the same sentence (life without parole) based on their age. For juvenile offenders, such a sentence may violate the Eighth Amendment.  [Citations.]  But the same sentence does not violate the Eighth Amendment when imposed on an adult, even an adult under the age of 26.

6

[Citation.] . . . [T]he Legislature could rationally decide to remedy unconstitutional sentences but go no further." (*Id.* at p. 204.)

Age is a rational basis for distinguishing juvenile LWOP offenders from young adults sentenced to LWOP. Drawing the line at age 18 is " 'the point where society draws the line for many purposes between childhood and adulthood.' " (*People v. Argeta* (2012) 210 Cal.App.4th 1478, 1482; see *Roper v. Simmons* (2005) 543 U.S. 551, 574 [125 S.Ct. 1183, 161 L.Ed.2d 1].) In criminal sentencing matters, both the United States Supreme Court and the California Supreme Court have found the line drawn between juveniles and nonjuveniles to be a rational one. (See, e.g., *Miller, supra*, 567 U.S. at p. 471 ["children are constitutionally different from adults for purposes of sentencing"]; *Roper v. Simmons, supra*, 543 U.S. at p. 574 ["The age of 18 is the point where society draws the line for many purposes between childhood and adulthood"]; *People v. Gutierrez (*2014) 58 Cal.4th 1354, 1380 [the age of 18 "is the line the [United States Supreme Court] has drawn in its Eighth Amendment jurisprudence"].)

Although section 3051 is not a sentencing statute, it impacts the length of sentence served. (*In re Murray* (2021) 68 Cal.App.5th 456, 464.) California appellate courts have therefore concluded that, for purposes of LWOP offenders, the line drawn at 18 is a rational one when distinguishing juvenile LWOP offenders from young adult LWOP offenders. (*Ibid.*; *Morales, supra*, 67 Cal.App.5th at p. 347; *Jackson, supra*, 61 Cal.App.5th at p. 199; *Acosta, supra*, 60 Cal.App.5th at pp. 779–780; *In re Jones* (2019) 42 Cal.App.5th 477, 482.) We reach the same conclusion here. The age threshold is rational and not arbitrary.

7

## III. Cruel and unusual punishment

Munoz argues that excluding young adult offenders sentenced to LWOP from youth offender parole hearings violates the ban on cruel and unusual punishment under the California Constitution.

The Eighth Amendment to the federal Constitution prohibits "cruel and unusual punishment." (U.S. Const., 8th Amend.) The California Constitution affords somewhat greater protection to criminal defendants by prohibiting "[c]ruel *or* unusual punishment." (Cal. Const., art. I, § 17, italics added; see *People v. Haller* (2009) 174 Cal.App.4th 1080, 1092.) "A punishment is cruel or unusual in violation of the California Constitution 'if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' [Citation.] Because it is the Legislature's function to define crimes and prescribe punishments, the judiciary should not interfere 'unless a statute prescribes a penalty "out of all proportion to the offense." ' " (*People v. Baker* (2018) 20 Cal.App.5th 711, 723 (*Baker*).)

Munoz concedes his sentence was neither cruel nor unusual at the time it was imposed. Munoz nevertheless argues his LWOP sentence became constitutionally infirm once the Legislature granted youth offender parole hearings to some offenders over the age of 18. By extending relief to non-juvenile offenders, Munoz argues, the Legislature recognized that young adults up to age 26 are less culpable than those who commit offenses after age 26 and should be given the opportunity to demonstrate eligibility for parole. Munoz's argument overlooks the fact that in 2020—four years after the Legislature extended

8

youth offender parole hearings to young adult offenders up to age 23, and two years after it extended such relief to offenders up to age 26—the California Supreme Court held the death penalty for young adult offenders is not cruel and unusual punishment. (See *People v. Flores* (2020) 9 Cal.5th 371, 429 (*Flores*).) As the court in *In re Williams* (2020) 57 Cal.App.5th 427 noted, if the ban on cruel and unusual punishment "does not prohibit a sentence of death for [young adult offenders], then most assuredly, it does not prohibit the lesser LWOP sentence." (*Id*. at p. 439.) Although *Flores* was decided on federal constitutional grounds (*Flores*, at p. 429), Munoz offers no persuasive argument against applying the court's reasoning in that case to claims under the California Constitution. (See *Baker, supra*, 20 Cal.App.5th at p. 733 [noting the "considerable overlap in the state and federal approaches" to cruel and/or unusual punishment].) We therefore reject Munoz's argument that LWOP sentences imposed on young adult offenders constitute cruel or unusual punishment in violation of the California Constitution. (See *Williams*, at p. 439 [rejecting argument LWOP sentences are cruel and unusual punishment when imposed on 21-year-old offenders]; *People v. Argeta, supra,* 210 Cal.App.4th at p. 1482 [rejecting claim that a functional LWOP sentence for an 18-year-old offender is categorically cruel and/or unusual punishment].)

## IV. Ineffective assistance of counsel

Munoz contends that should this court determine that any arguments he raises on appeal have been waived or forfeited by failure to assert them in the trial court below, such waiver or forfeiture would be the result of defense counsel's failure to perform with reasonable competence. We find no such waiver or forfeiture, and no merit in any of the arguments Munoz raises on

appeal.  We therefore reject his ineffective assistance of counsel claim.

## DISPOSITION

The order denying Munoz's request for a *Franklin* proceeding pursuant to section 1203.01 is affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


HOFFSTADT, J.

10